**NARRAGANSETT INDIAN TRIBE,**
**Plaintiff, Appellee,**

v.

**RIBO, INC., et al.,**
**Defendants, Appellees,**

**Appeal of Lloyd G. WILCOX and**
**Lawrence E. Ollivierre.**

**No. 88–1541.**

United States Court of Appeals,
First Circuit.

Submitted Nov. 4, 1988.
Decided Feb. 14, 1989.

See also, D.C., 686 F.Supp. 48.

Lloyd G. "Running Wolf" Wilcox and Lawrence E. "Touquannohh On Kawohdt" Ollivierre, on brief, pro se.

George Vetter, Gordon P. Cleary and Vetter & White, Providence, R.I., on brief, for plaintiff, appellee Narragansett Indian Tribe.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Lloyd G. Wilcox (a/k/a "Running Wolf") and Lawrence E. Ollivierre (a/k/a "Touquannohh On Kawohdt") filed a joint notice of appeal from an order of the United States District Court for the District of Rhode Island denying their motion to inter-

vene as of right as parties-defendant in this action.[1] We affirm.

## I.

We set out the background of the underlying lawsuit in capsulated form, solely to place in context the ruling on the motion to intervene. In so doing, we borrow liberally from the district court's later opinion disposing of the merits of the suit. *See Narragansett Indian Tribe v. Ribo, Inc.*, 686 F.Supp. 48 (D.R.I.1988).

Wilcox and Ollivierre were at one time members of the Tribal Council of the Narragansett Indian Tribe. The Council entered into an agreement with a Texas corporation,[2] the upshot of which was that two parcels of land would be conveyed to the Tribe. A high-stakes bingo hall would then be constructed. Funds for acquiring the land and building the casino would be loaned to the Tribe by the Texas corporation. The lender would, in exchange, receive promissory notes, secured by (i) a mortgage on each parcel of land, and (ii) a priority claim to the anticipated profits from the bingo operation. Thereafter, the principal of the Texas corporation conveyed Parcel I to the Tribe and Parcel II was conveyed by an individual seemingly unconnected to defendants (and in any event, not a party to this suit). The mortgages and notes were delivered and ancillary agreements were signed.

Considerable furtiveness surrounded the transaction: the terms of the agreement and the plan to construct the bingo hall were concealed from the Tribe as a whole and from the general public. The mortgages were not recorded. Eventually, however, members of the Tribe learned of the arrangement. A tribal election was impending, and the matter became a campaign issue. In the election, a slate of candidates unalterably opposed to bingo operations on tribal land was chosen to comprise the new Tribal Council. The election result was certified by the federal Bureau of Indian Affairs, notwithstanding that the proposed intervenors—former members of the Tribal Council—did not recognize its legitimacy.[3]

The defendants likely saw the handwriting on the wall. Once the election results were certified, they recorded the mortgages. In May 1986, the new Tribal Council brought this suit in the district court, seeking a declaration that the notes and mortgages were void because the agreement underlying them had not been approved by the federal Department of the Interior as required by statute. *See* 25 U.S.C. § 81. The defendants counterclaimed to enforce the notes and mortgages or, in the alternative, to rescind the deeds by which title had been conveyed to the Tribe and to compel restitution of seed money advanced.

The district judge set trial to start on May 23, 1988. On May 10, the proposed intervenors filed their motion to intervene as of right. The controlling rule is not in question; it states in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). The district court held a hearing on the appellants' motion. They

---

1. The motion to intervene, as well as the notice of appeal, recited that Hiawatha J. Brown was aligned with Wilcox and Ollivierre. Brown, however, did not sign either document. It would be idle to consider whether the failure to sign these pleadings is itself fatal to any claim which Brown might have; it is perfectly clear that, even if he were a proper party to the motion and-or the appeal, he would fare no better than his comrades.

2. The contracting party was the corporate parent of RIBO, Inc. and C.B.O., Inc., the named defendants in the present suit.

3. In other proceedings, Wilcox and Ollivierre have litigated, and apparently are continuing to litigate, the validity of the election. These proceedings are pending before a different judge of the District Court of Rhode Island (Chief Judge Boyle).

contended that they, in fact, comprised (or represented) the true governing body of the Tribe; that they never initiated, nor authorized any attorney to bring, the suit; and that these "facts" necessitated their intervention in order that the Tribe's interests might be safeguarded. The Tribe's counsel countered by observing that several members of the new Tribal Council had retained him to represent the Tribe. These persons, he said, were present in the courtroom. Moreover, they had in their possession a certification from the Bureau of Indian Affairs validating the election.

The district court was unimpressed with the proposed intervenors' reasoning. It pointed out that the motion to intervene was well out of time. Moreover, the identity of the legitimate governing body of the Tribe was not in issue in this case;[4] and with respect to the issue that was before the court, *i.e.*, the validity or invalidity of the notes and mortgages, the judge found the proposed intervenors unable to state precisely where their interest lay. Finally, the court observed that, no matter what position the proposed intervenors might take on the issue *sub judice*, there had been no showing that the existing parties would be less than vigorous or able in defense. In short, any legitimate interest of the proposed intervenors would be adequately represented by parties already before the court. The judge denied the motion. This appeal followed.

## II.

■■■ We review a district court's determination that a motion to intervene of right was untimely only for abuse of discretion. *NAACP v. New York*, 413 U.S. 345, 364–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973); *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 143 (1st Cir.1982). We have recently catalogued the four factors which bear most heavily on the determination of timeliness:

> (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

*United States v. Metropolitan Dist. Comm'n*, 865 F.2d 2, 5 (1st Cir.1989); *see also Garrity v. Gallen*, 697 F.2d 452, 455 (1st Cir.1983); *United Nuclear Corp.*, 696 F.2d at 143. An objective look at this medley of factors in the context of this case swiftly draws the teeth from appellants' argument.

1. The proposed intervenors admitted that they were aware of the lawsuit by early April 1987—more than thirteen months prior to their intervention effort. They did not file their motion sooner, they say, because they believed that the lawsuit was frivolous; in their estimation, it would never go to trial, but would be dismissed. When it became apparent that this view was overly sanguine, they sought to intervene as the scheduled trial date approached.

The excuse simply will not wash. Parties having knowledge of the pendency of litigation which may affect their interests sit idle at their peril. As we have said in a different context: "The law ministers to the vigilant, not to those who sleep upon perceptible rights." *Puleio v. Vose*, 830

---

**4.** *See supra* note 3. Contained in the record before the district court in this case was a prior order of Judge Pettine which, in the course of affirming a magistrate's order compelling the depositions of the proposed intervenors, stated in pertinent part:

> The deponents not having disputed the following allegations by the plaintiff, the same are accepted:
>
> The [new] Tribal Council which brought this suit has been recognized by the Bureau of Indian Affairs, the Department of Justice, and a judgment of the United States District Court for the District of Columbia, as the lawful tribal government. Title 28, Section 1362 of the United States Code gives the present [new] Tribal Council power and right to bring this suit.
>
> Counsel hired by the [new] Tribal Council to prosecute this action have a representation agreement with the Tribe approved by the Bureau of Indian Affairs.

F.2d 1197, 1203 (1st Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988). If appellants believed that their interests as the alleged authentic representatives of the Tribe were threatened by the outcome of a trial on the validity of the notes and mortgages, it is hard to see why those interests were no less implicated by the mere filing of, and pretrial proceedings in, a lawsuit sponsored by persons they viewed as interlopers. That appellants may have underestimated the potency of the Tribe's suit does not soften the blow; they had ample time within which to seek early intervention, but eschewed that course. The bringing of an action aimed at squelching the bingo operation which they favored was notice enough. In the metier of the case, the would-be intervenors gambled and lost.

2. Not only does the timing of the motion militate against appellants, but the prejudice prong cuts against them as well. When the late-filed motion was argued, counsel for the Tribe objected. He protested that allowing intervention at that stage would be unfair because he had "no idea of the nature of the claims that are sought to be asserted here or the nature of the evidence that would be introduced." Hearing Transcript (May 23, 1988) at 16. This objection rings true in light of the record. Given the unusual nature of the case, and the complexity of the issues, introduction of an unknown quantity at the eleventh hour would have necessitated either a continuance or the endorsement of trial by ambush. In any event, allowing the proposed intervenors to join the fray on the eve of trial would have been manifestly unfair to plaintiff.

3. By the same token, we discern little prejudice to the proposed intervenors. Certainly, none was articulated at the hearing before the district judge. Appellants' chief concern seems to have been to keep the tribal gaming enterprise on track. That interest was shared by the corporate defendants and vigorously asserted by them. Since the named defendants had "the same ultimate goal" as appellants, adequacy of representation may fairly be presumed. *United Nuclear,* 696 F.2d at 144; *Moose-*

*head Sanitary Dist. v. S.G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir.1979).

4. We have carefully examined the remaining circumstances reflected in the record, and find none of them so out-of-the-ordinary as to forestall the combined force of factors 1–3, *supra.* In particular, we reject appellants' asseveration that they should have been permitted to intervene, even at the last minute, because they were the legitimate tribal representatives and signatories to the original agreement; and as such, would never have filed the suit. That may be so. Nonetheless, the issue before the district court—whether the agreements, notes, and mortgages were void as a matter of law—was entirely independent of the question of who the legitimate representatives of the Tribe might have been when the documents were signed. In view of the evidence of the authority of those who brought suit on behalf of the Tribe, *see supra,* we do not find it inappropriate for the district court to have proceeded·to determine the validity of the indentures, notwithstanding the proposed intervenors' allegations of nonauthorization, and in their (self-induced) absence.

We need handicap this race no longer. We are unable to find any hint of discretion abused in the district court's denial of the motion to intervene as untimely. The proposed intervenors did not file their motion until more than a year after they became aware of the suit; their rationale for delay is unhelpful to their cause; the issue as to which group constituted the rightful governing body of the Tribe was not properly before the district court; the proposed intervenors were unable to state where their interest lay with respect to the narrow issues which were properly before the court; to the extent that those interests can be divined, they were adequately represented by existing parties; and permitting intervention would inevitably have delayed the case in order to allow the Tribe to engage in discovery vis-a-vis the proposed intervenors (or forced it to proceed, blindfolded, at its peril). We believe that the district court's analysis and conclusions

were entirely supportable, and that rejection of the motion fell well within the wide ambit of the lower court's discretion.[5] *See United States v. Metropolitan Dist. Comm'n,* at 6; *United Nuclear Corp.,* 696 F.2d at 143–44; *Culbreath v. Dukakis,* 630 F.2d 15, 20–24 (1st Cir.1980).

AFFIRMED.

---

**5.** Ollivierre's motion to proceed *in forma pauperis* was denied by us on October 6, 1988, without prejudice to resubmission, properly documented. No such submission has been proffered, and it appears that the docket fee remains unpaid. This failure alone would serve as an independently sufficient ground warranting dismissal of the appeal. *See* 1st Cir.Loc.R. 3.