UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-20442
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER MERHAN,

Defendant-Appellant.

_____

No. 98-20453
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DHONOVAN SERRANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(97-CR-191-11)
_____

August 24, 1999

Before SMITH, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

_____

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellants having been convicted, *inter alia*, for conspiracy to commit both bank fraud and bank larceny, primarily at issue are the convictions' evidentiary sufficiency and Sentencing Guidelines' increases. We **AFFIRM**.

## I.

In May 1996, a predecessor to Wells Fargo Bank hired Christopher Merhan as a teller at its branch in Houston, Texas. Typically, Merhan worked in the mornings and, with supervisor Kenneth Chandler, was responsible for opening the branch.

For security reasons, the three-number combination to the main vault door was divided among two people. To open the vault each morning, Merhan was given the first two numbers; Chandler, the last. Unknown to his superiors, Chandler, because sometimes late to work, gave Merhan that last number, so that he, alone, could open the vault.

At trial, the Government claimed that Merhan became involved in a bank fraud scheme in early 1997. The leader was Tai Duc Lai, known as "Calvin". Merhan and co-defendant Dhonovan Serrano were acquainted with Calvin.

Calvin testified that he was able to make unauthorized withdrawals from bank accounts as a result of information Merhan gave him. Sometimes using Serrano as a conduit, Merhan would

supply Calvin with account information, including account numbers, balances, and the names and addresses of the account holders. Calvin then recruited "runners", who would visit bank branches and, using false Texas drivers' licenses provided by Calvin, withdraw money from the accounts. In return, the runner and Merhan received payment out of the fraudulently withdrawn funds.

The Government presented evidence that, the day after Merhan handled a deposit for the account of Quaker Loh on 13 March 1997, an unauthorized withdrawal of $2400 was made from it. Another unauthorized withdrawal, in the amount of $2500, was made a few days later; Merhan was the teller for this withdrawal.

Further, Frank Bokeloh's account suffered unauthorized withdrawals totaling $19,000 during the first two days of April 1997. The bank's computer records showed that Merhan had examined Bokeloh's account information for approximately six minutes on 21 March 1997, although no teller transaction involving the account occurred that day.

Merhan and Serrano were also charged with being involved in a bank larceny, for which Calvin arranged a staged robbery at Merhan's branch. Merhan told police that, after arriving at work at 7:00 a.m. on 16 May 1997, two individuals approached his vehicle and forced him at gunpoint to enter the bank and de-activate the

alarm; that the robbers instructed him not to enter the "duress code", a secret number for a robbery in progress alert, which the robbers knew was 1790; that, after telling the robbers that he did not know both sets of numbers needed to open the main vault, they told him they knew he had the complete combination and forced him to open it; that the robbers then bound him and took approximately $392,000 from the vault; and that he was able to free himself and call the police.

Those involved in the "robbery" testified, however, that it was staged using inside information from Merhan. Calvin testified that Merhan provided him with information regarding the bank's operating procedures, the location of alarms and cameras, the alarm codes, and the cash shipment schedule, and also gave him a schematic drawing of the inside of the branch. Calvin had then recruited several accomplices.

Calvin also testified that, shortly before the staged robbery, he alerted Serrano, who then contacted Merhan. Telephone records confirmed that, during the period before the staged robbery, Merhan made several calls to Calvin and Serrano.

Tuyen Vi Chau, known as "Richard", one of the "robbers" who approached Merhan while he was in his vehicle, testified that he understood that the teller was a participant in the "robbery"; that

- 4 -

it was staged; and that, although he did not know the insider's name, Calvin had told him that the insider was a Filipino who drove a white Civic hatchback. Both characteristics fit Merhan.

Following the staged robbery, the accomplices divided the stolen money. Later that day, Calvin met Serrano and handed him a shoe box with $60,000 in cash for him to deliver to Merhan as his share of the proceeds. Following the larceny, Serrano spent large amounts of cash, including purchasing two airline tickets to Hong Kong costing approximately $9,000.

A few months after the "robbery", Merhan and Serrano, along with numerous others, were charged with conspiracy to commit bank fraud and bank larceny (count I), bank fraud (counts II and III), entering with intent to commit bank larceny (count IV), bank larceny (count V), and receiving stolen money (count VI).

Following a jury trial, Merhan and Serrano were convicted for conspiracy (count I), Merhan for bank fraud (count II), and Serrano

for receipt of stolen money (count VI); each was acquitted on the other counts.  Merhan's sentence included 57 months in prison and $432,000 in restitution; Serrano's, 46 months in prison and $464,000 in restitution.

## II.

## A.

Serrano first contests the denial of his motion to suppress evidence seized during a search of his apartment and automobile, claiming that his written consent was *not* voluntary.  As he was leaving his apartment in August 1997, he was arrested by a Houston police officer.  FBI Agents soon arrived and obtained *written consent* for the search.

To be valid, consent must be both free and voluntary.  *E.g., United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993).  "The government has the burden of proving, by a preponderance of the evidence, that the consent was voluntary."  *Id.*  This is a question of fact to be "determined from the totality of the circumstances surrounding the search".  *United States v. Morales*, 171 F.3d 978, 982 (5th Cir. 1999) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

For this, six factors must be considered: "(1) the voluntariness of the defendant's custodial status; (2) the presence

of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found". *Id.* We review a post-hearing denial of a suppression motion under a "particularly strong" clearly erroneous standard, because the judge was able to observe the witnesses. *Kelley*, 981 F.2d at 1470 (quoting *United States v. Sutton*, 850 F.2d 1083, 1086 (5th Cir. 1988)).

Of course, that Serrano was in custody when he gave his consent does *not ipso facto* invalidate it. *United States v. Watson*, 423 U.S. 411, 424 (1976). At the suppression hearing, Serrano claimed that his consent was not voluntary because an FBI Agent told him that he would be more likely to make bond if he cooperated; the Agent denied making the statement. For this credibility call, the district court's ruling was *not* clearly erroneous.

### B.

Appellants challenge the evidentiary sufficiency for their convictions. For properly preserved sufficiency challenges, we will affirm if, when viewing the evidence in the light most favorable to the verdict and accepting the credibility choices of

the jury, a rational jury could have found that the Government proved, beyond a reasonable doubt, the essential elements of the charged crime. *E.g.,* **United States v. Guerrero**, 169 F.3d 933, 938 (5th Cir. 1999) (citing **United States v. Pankhurst**, 118 F.3d 345, 351 (5th Cir.), *cert. denied*, 118 S. Ct. 630 (1997)). Serrano and Merhan preserved this standard of review by moving for judgment of acquittal at the close of the evidence. FED. R. CRIM. P. 29(a); **Guerrero**, 169 F.3d at 938; **Pankhurst**, 118 F.3d at 352.

### 1.

Merhan first asserts that the evidence is insufficient to support his convictions for conspiracy to commit bank fraud (one of the two charged objects of the conspiracy; a similar challenge to the other object is discussed *infra*) and for bank fraud.

### a.

To establish a conspiracy under 18 U.S.C. § 371, the Government "must prove beyond a reasonable doubt (1) that two or more people agreed to pursue an unlawful objective; (2) that the defendant voluntarily agreed to join the conspiracy; and (3) that one or more of the members of the conspiracy committed an overt act to further the objectives of the conspiracy". **United States v. Campbell**, 64 F.3d 967, 975 (5th Cir. 1995).

- 8 -

Merhan asserts that his conspiracy conviction rested primarily on Calvin's testimony, which he claims was insufficient to persuade a rational jury of his guilt. In this regard, Merhan maintains that numerous other people known to Calvin had ties to the bank and could have provided the account information.

However, "a [conspiracy] conviction may rest on the uncorroborated testimony of an accomplice, even one who has chosen to cooperate with the government in exchange for leniency, as long as the testimony is not insubstantial on its face". *United States v. Posada-Rios*, 158 F.3d 832, 861 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1280, 1487, 1792 (1999). "Testimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature." *Id.*

Calvin testified that Merhan supplied him with information regarding both Loh and Bokeloh's accounts and that Merhan received a share of the unlawfully-obtained money. Needless to say, this testimony is not "insubstantial on its face". Moreover, bank records demonstrating that Merhan had accessed the Loh and Bokeloh accounts, and Jimmy Ngo's testimony linking Merhan to the fraud, corroborate Calvin's testimony and provide further evidence from which a rational jury could find guilt.

b.

Merhan relies on essentially the same bases for his sufficiency challenge to his bank fraud conviction. To establish such fraud, pursuant to 18 U.S.C. § 1344(1), the Government must prove that Merhan "knowingly execute[d], or attempt[ed] to execute, a scheme or artifice — (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, ... or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises". *See also* **United States v. Schnitzer**, 145 F.3d 721, 734 (5th Cir. 1998); **Campbell**, 64 F.3d at 975.

The above-described evidence of Merhan's involvement in the fraud scheme was also sufficient to prove beyond a reasonable doubt that he committed § 1344(1) bank fraud. *See* **United States v. Barakett**, 994 F.2d 1107, 1111 (5th Cir. 1993) ("While section 1344(1) prohibits only crimes directed at financial institutions, we have not held that the statute punishes only schemes directed *solely* at institutional victims"); **United States v. Church**, 888 F.2d 20, 23 (5th Cir. 1989) (even proof of extremely remote risk of loss to bank suffices).

2.

As noted, Merhan also claims that the evidence was insufficient to sustain a conviction for conspiracy to commit bank larceny (the other charged object).  He relies primarily on his acquittal on the substantive bank larceny counts.

This acquittal-based contention is meritless.  Needless to say, acquittal on substantive charges does *not* mandate acquittal on a corresponding conspiracy charge.  *E.g., **United States v. Duvall***, 846 F.2d 966, 975-76 (5th Cir. 1988).

Three persons testified that there was an agreement between two or more persons to conduct a staged robbery of the branch. Calvin testified that Merhan agreed to join the conspiracy and provided information to the "robbers"; two other co-conspirators testified that they knew Merhan to be the bank "insider" assisting in staging the robbery.  And, more than one conspirator committed an overt act in furtherance of the conspiracy.  Although the evidence showing Merhan's participation in the conspiracy is primarily accomplice testimony, it is not "insubstantial on its face".  **Posada-Rios**, 158 F.3d at 861.

3.

Serrano first claims that the evidence did not prove that he was linked to the conspiracy, or agreed to assist with the staged

robbery, or committed any overt act. But, Calvin and other co-conspirators testified that Serrano acted as an intermediary between Calvin and Merhan during the bank fraud and bank larceny schemes; a co-conspirator testified that Serrano met with Calvin and Merhan to discuss the staged robbery; and there was evidence that Serrano made several large cash expenditures following the staged robbery.

### 4.

To sustain a conviction under 18 U.S.C. § 2113(c) for receipt of stolen money, Serrano's other conviction, the Government must prove that (1) he "receive[d], possesse[d], store[d], barter[ed], [sold], or dispose[d] of" (2) money stolen from a bank (3) with knowledge that the money was stolen. *See **United States v. Buchner***, 7 F.3d 1149, 1152-53 (5th Cir. 1993) (§ 2113(c) is "intended for those persons who receive the stolen property from the bank robber").

Serrano claims that there was insufficient proof that he knew the money was stolen from the bank. But, Calvin testified that Serrano assisted him and Merhan in planning the staged robbery; and that, after the robbery, he gave Serrano a shoe box containing $60,000. Another co-conspirator testified that Serrano met with Merhan and Calvin to discuss the larceny. Again, this accomplice

testimony is not "insubstantial on its face". *Posada-Rios*, 158 F.3d at 860.

C.

Appellants challenge the district court's multiple mistrial denials when the jury indicated it was unable to reach a verdict. It sent several notes to the judge along this line.

On the first day, the jurors advised that they were "deadlocked". Appellants moved for a mistrial. Instead, the judge instructed the jurors to resume deliberations the next morning.

After deliberating for a total of about eight hours, the jurors again advised that they were "locked". Again, Appellants moved for a mistrial. The district court refused to grant one and gave the jury a modified *Allen* charge.[2] Subsequently, the jury requested that the testimony of five Government witnesses be read. Appellants, once again, moved for a mistrial. The district court instead instructed the jury to designate the portions of testimony it wished to have read.

---

[2]*See* *Allen v. United States*, 164 U.S. 492, 501–02 (1896) (not error for a court to render supplemental instructions to a deadlocked jury). The trial judge may remind the jurors of their duty to reach a verdict and instruct them to consider the opinions of the other jurors. *Id.* "While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room." *Id.* at 501.

The final note asked: "If we find one defendant guilty of Count 1, part A [conspiracy to commit *bank larceny*], and the other defendant guilty of Count 1, part B [conspiracy to commit *bank fraud*], does this make each defendant guilty of the entire Count 1?" Urging this indicated that the jurors were seeking a compromise verdict, Appellants again moved for a mistrial. Instead, the district court instructed the jurors to continue their deliberations.

A mistrial denial is reviewed for abuse of discretion. *United States v. Sylvester*, 143 F.3d 923, 929 (5th Cir. 1998). The first two denials, which followed jury deadlock notes, were not such abuses. When they transmitted the second note, the jurors had been deliberating only slightly over eight hours. For example, our court held that it was not an abuse of discretion to deny a mistrial after the jury deliberated for seven days in a complex bank fraud trial. *United States v. Heath*, 970 F.2d 1397, 1405-06 (5th Cir. 1992). The case against Merhan and Serrano was also complex.

For the third denial, which corresponded to the testimony request (written after the *Allen* charge), Appellants assert that the jury note reveals that it interpreted the *Allen* charge as requiring them to start over and surrender it conscientious

- 14 -

conviction. The **Allen** charge specifically instructed the jurors *not* to do so.

The final denial followed the note regarding the effect of convictions. As before, Appellants maintain that the final two notes revealed that the jury was trying to reach a compromise verdict by surrendering its conscientious conviction because of a coercive **Allen** charge. There is no evidence that a juror was coerced; instead, the questions are consistent with conscientious deliberations and the jury's duty to render a decision in accordance with the law.

Obviously, a district court has broad discretion to give an **Allen** charge. **United States v. Pace**, 10 F.3d 1106, 1125 (5th Cir. 1993). Appellants do not challenge its content, and the circumstances surrounding the charge being given were not coercive. **Heath**, 970 F.2d at 1406 (deviation from approved charges cannot be so prejudicial as to require reversal and circumstances must not be coercive). As noted, our court found no abuse of discretion for an **Allen** charge in a complex bank fraud trial where the jury remained deadlocked after seven days of deliberation. **Id.** Likewise, giving the **Allen** charge in this case, after less than two days of deliberation, was not an abuse of discretion.

Appellants challenge their sentences on several bases. Application of the Sentencing Guidelines is reviewed *de novo*; factual findings, for clear error. *E.g.,* **Sylvester**, 143 F.3d at 931. A sentence will be upheld unless it was imposed in violation of law or as a result of an incorrect application of the Guidelines, or if it is outside the range of the applicable guideline and is unreasonable. *E.g., United States v. Wyjack*, 141 F.3d 181, 183 (5th Cir. 1998).

1.

Merhan claims that he was erroneously sentenced under the theft guideline, U.S.S.G. § 2B1.1, rather than the fraud guideline, resulting in a higher base offense level. U.S.S.G. § 1B1.2(d) ("A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit"); *see* **United States v. Fisher**, 22 F.3d 574, 576 (5th Cir. 1994) ("§ 1B1.2(d) governs the application of the Sentencing Guidelines to multiple-object conspiracies").

Merhan acknowledges that, in accordance with § 1B1.2(d), the district court found, beyond a reasonable doubt, that bank larceny was an object of the conspiracy. *See* **United States v. Manges**, 110

F.3d 1162, 1178 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1675 (1998) (district court may sentence on more serious of two charged conspiracies if "district court itself would have convicted [defendant] on that basis"); **United States v. Cooper**, 966 F.2d 936, 941 (5th Cir. 1992).  He claims, however, insufficient evidence for that finding, because he was acquitted of the substantive bank larceny charges.  But, as noted, that finding was not precluded by the bank larceny acquittal.  *See* **Duvall**, 846 F.2d at 975 (conspiracy and substantive counts are "separate and distinct crimes" and "conviction on any count may stand if it is supported by the evidence"); **United States v. Jackson**, 167 F.3d 1280, 1282 (9th Cir. 1999) (jury acquittal on substantive offense does not prohibit application of § 1B1.2(d) at sentencing); *see also* **Cooper**, 966 F.2d at 941 (§ 1B1.2(d) properly applied where district court found object of conspiracy was proven beyond reasonable doubt).[3]

### 2.

Appellants also assert that this § 1B1.2(d) application deprived them of their Sixth Amendment right to trial by jury.  Our court has held otherwise.  **Manges**, 110 F.3d at 1179 n.16.

---

[3]Serrano adopts Merhan's issues presented here.  It is unclear whether this issue is one he can adopt; assuming he can, it likewise fails.

3.

The next challenge is to the relevant conduct used in calculating offense levels. The amount of loss calculation is reviewed for clear error. *United States v. Sutton*, 77 F.3d 91, 94-95 (5th Cir. 1996).

Merhan contests the inclusion of the $392,000 loss from the bank larceny; Serrano, any amount over the $60,000 he received from Calvin. And, both contend they should not be held accountable for funds related to the substantive counts of which they were acquitted. However, the evidence supports the finding that each conspired to commit bank larceny and bank fraud. The loss calculations were not clearly erroneous.

4.

Appellants challenge each base offense level being enhanced by two-levels for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. We review only for clear error. *E.g., United States v. Gray*, 105 F.3d 956, 971 (5th Cir.), *cert. denied*, 520 U.S. 1128, 1150, 1246 (1997).

"If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. §

3C1.1. Perjury is a type of conduct to which the enhancement applies. U.S.S.G. § 3C1.1 application note 3(b). If the district court finds that a defendant committed perjury at trial, the obstruction enhancement is required. ***United States v. Gonzalez***, 163 F.3d 255, 262 (5th Cir. 1999); ***United States v. Humphrey***, 7 F.3d 1186, 1189 (5th Cir. 1993).

Merhan and Serrano's presentence investigation reports (PSRs) did *not* recommend the enhancement. The Government objected, claiming perjury by Merhan at the trial and by Serrano at the suppression hearing.

At Merhan's sentencing, and adopted for Serrano's which followed immediately thereafter, the district court stated:

> Counsel [for the Government] cites examples of each defendant's trial testimony that they believe is perjurious, in effect, perjury.
>
> ... The Court *sustains this objection and finds* by a preponderance of the evidence that Merhan and Serrano committed perjury during their trial testimony; therefore, a two-level adjustment for obstruction of justice will be given to each defendant.

(Emphasis added.)

### a.

Merhan asserts that the court failed to make sufficient factual findings; and, in the alternative, that his trial testimony

- 19 -

does not support the enhancement.  This insufficient findings claim is based upon *United States v. Dunnigan*, 507 U.S. 87, 95 (1993), which provides that, "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out".  Merhan claims failure to make specific findings that each perjury element was satisfied.

But, a detailed and specific finding on each perjury element is not required.  *Id.* ("[I]t is *preferable* for a district court to address each element of the alleged perjury in a separate and clear finding" (emphasis added)).  Rather, "[t]he district court's determination that enhancement is required is sufficient ... if ... the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury".  *Id.* at 94.

A witness commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory".  *Id.*  The district court referenced the Government's objection, which specifically cited Merhan's testimony

that he did not provide Calvin with information for the bank fraud and bank larceny. The district judge's statements at sentencing and his reference to the Government's objection reflect a finding that Merhan lied when he so testified. *See* **Gonzalez**, 163 F.3d at 263 (affirming obstruction enhancement where court adopted PSRs and "expressly stated its finding that each defendant perjured himself").

Of course, perjury requires materiality. Although neither the Government's objection, nor the district judge's statements, specifically address this, our court has upheld similar obstruction enhancements where, "[e]ven though there was no explicit finding by either the trial or sentencing judge that this testimony was material, [the defendant's] testimony on this topic was obviously 'material' in that it was clearly 'designed to substantially affect the outcome of the case'". **United States v. Cabral-Castillo**, 35 F.3d 182, 187 (5th Cir. 1994); *see* **United States v. Como**, 53 F.3d 87, 90 (5th Cir. 1995); **United States v. Storm**, 36 F.3d 1289, 1297 (5th Cir. 1994). Likewise, it is obvious that Merhan's identified statements went to the very heart of the case against him and were designed to affect the verdict.

Merhan challenges finding his statements perjurious; but, as demonstrated *supra*, that finding was not clearly erroneous. *See*

- 21 -

*Dunnigan*, 507 U.S. at 95-96 ("Given the numerous witnesses who contradicted respondent regarding so many facts on which she could not have been mistaken, there is ample support for the District Court's finding."); *United States v. Laury*, 985 F.2d 1293, 1309 (5th Cir. 1993).

b.

The Government, for sentencing, claimed perjury by Serrano at the suppression hearing when he "unequivocally testified [1] that the officers and agents who arrested him and searched his apartment and automobile did not advise him of his right to refuse to consent to the searches and [2] that he did not consent thereto". But, regarding the right to refuse, Serrano did *not* so testify; instead, he testified that he *was informed* of that right. At oral argument on appeal, the Government corrected its error.

Serrano maintains that the second part of the Government's objection – that he testified he did *not* give consent – is also incorrect because he testified that he *did sign* the consent form. The Government agrees that Serrano did testify in that limited respect, but maintains that the objection more broadly refers to his testimony that consent was *not given* voluntarily. As the Government points out, the issue at the suppression hearing was *not*

whether Serrano gave consent; it was whether that consent was voluntary.

We agree with the Government's interpretation. The same district judge presided over the suppression and sentencing hearings; he was aware that Serrano had given written consent, but had testified that it was *not* voluntary. Also, the district judge, as noted, found that both defendants had committed perjury. *See Gonzalez*, 163 F.3d at 263.

Further, the Government's objection to Serrano's PSR specifically addressed materiality, noting that, had the district court credited Serrano's suppression hearing testimony, a large amount of evidence would have been suppressed and the Government's case weakened substantially. Therefore, the district judge, by reference to the objection, made sufficient findings to support the obstruction enhancement.[4]

---

[4]At oral argument, Serrano claimed yet another reason why the perjury finding was not supported by the record — his testimony could have been the result of mistake. However, Serrano's brief challenges only the sufficiency of the stated bases for the findings. Normally, issues raised for the first time at oral argument will *not* be addressed. *E.g.*, *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 270 (5th Cir. 1998); *United States v. Miles*, 10 F.3d 1135, 1137 n.3 (5th Cir. 1993), *cert. denied*, 118 S. Ct. 1201 (1998). The necessity for this rule is obvious. This contention is *not* an exception to it.

Next, Merhan challenges his enhancement for abuse of a position of trust: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase [the offense level] by 2 levels". U.S.S.G. § 3B1.3. According to the commentary, however, the adjustment does not "apply in the case of embezzlement or theft by an ordinary bank teller". U.S.S.G. § 3B1.3, application note 1. "The application of § 3B1.3 is a sophisticated factual determination reviewed under the clearly erroneous standard." *United States v. Fisher*, 7 F.3d 69, 70 (5th Cir. 1993).

The PSR (adopted by the district court) recommended the enhancement. In response to Merhan's objection, the probation officer stated that Merhan's behavior "in the bank larceny scheme went beyond that of a mere teller" because he "provided the security sensitive information regarding the bank vault combination, [schematic] drawing of the facility[,] and security codes to the co-conspirators".

We must examine "the extent to which [Merhan's] position provides the freedom to commit a difficult-to-detect wrong". *United States v. Brown*, 7 F.3d 1155, 1161 (5th Cir. 1993) (quoting

*United States v. Hill*, 915 F.2d 502, 506 (9th Cir. 1990)). Generally, ordinary bank tellers do not occupy a position of trust because, "although the teller's position provides an opportunity to embezzle money, reasonably diligent supervisors could easily detect the wrongdoing after it has occurred". *Id.*

Unlike an ordinary bank teller, Merhan was responsible for opening the bank each morning; he knew the security codes; and the bank gave him part of the combination to the main vault. *See Fisher,* 7 F.3d at 70 (head cashier occupied position of trust because she supervised another, could get money out of vault and requisition money, and had only monthly spot checks). Further, his supervisor trusted him with the rest of the combination. *See id.* (noting that it was significant that defendant's supervisor stopped conducting spot checks because of her trust in defendant). These factors placed him in a position of trust. *See also United States v. Gordon*, 61 F.3d 263, 268 (4th Cir. 1995) (enhancement appropriate where defendant, who was head teller with access to security codes, facilitated armed robbery of bank); *United States v. Hathcoat*, 30 F.3d 913, 919 (7th Cir. 1994) ("In determining whether the defendant's position was a position of trust, we must analyze the situation from the perspective of the victim").

Additionally, Merhan's position significantly contributed to the facilitation of the staged robbery. He provided his co-conspirators with information regarding the dates of money drops at the bank, the security codes, the opening procedures, and the bank's interior floor plan. Further, he unlocked the bank door, disarmed the security system, and opened the vault for his co-conspirators on the day of the larceny. *See **United States v. Johnson***, 4 F.3d 904, 916 (10th Cir. 1993) (vault teller's position facilitated bank robbery where she instructed others how to rob bank and avoid detection and handed the money to the robber).

6.

Appellants contest their § 5K2.6 upward departures for possession of a firearm by one of the co-conspirators during the bank larceny. Decisions to depart upward are reviewed for abuse of discretion. ***Koon v. United States***, 518 U.S. 81, 91 (1996).

Appellants first contend that the trial evidence was insufficient to support the statement in the PSR that a firearm was used during the staged robbery. However, they do not demonstrate that the statement was erroneous; Merhan testified at trial that one of the "robbers" put a firearm to his head; and both state in their briefs that one of the "robbers" had a gun. Additionally, one of the "robbers" initially told investigators that one of the

co-conspirators had a firearm during the staged robbery.  Merhan and Serrano have failed to show that the information in the PSR relating to the use of a weapon is materially untrue.  *See United States v. Davis*, 76 F.3d 82, 84 (5th Cir. 1996) (district court may credit evidence for sentencing purposes that has "some indicia of reliability") (quoting *United States v. Shacklett*, 921 F.2d 580, 585 (5th Cir. 1991)).

Appellants also claim that the district court's findings were insufficient for us to review the propriety of the departure.[5] "Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon*, 518 U.S. at 98; *see also United States v. McDermott*, 102 F.3d 1379, 1384 (5th Cir. 1996). The district court did *not* specifically discuss why the firearm took this case out of the heartland of the typical bank larceny case.

Section 5K1.0 states that "this subpart seeks to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines".  At

_____

[5]Merhan also asserts, once again, that he should not be held responsible for the firearm use because he was acquitted of the substantive bank larceny charges.  As noted, that acquittal does not relieve him of liability as a co-conspirator in the bank larceny.

- 27 -

§ 5K2.6, the Commission identified the use of a weapon as one of those factors:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others....[6]

Thus, the Guidelines acknowledge that they do not adequately take into account the use of a firearm in all offenses, and that this is a proper ground for departure. Therefore, the Guidelines state that use of a firearm takes a case out of the heartland of typical cases; and the district judge's reference to § 5K2.6 is sufficient to support the decision to depart. *See United States v. Lee*, 989 F.2d 180, 183 (5th Cir. 1993) ("The Sentencing Commission permits courts to depart from the guidelines where weapons are used in the commission of an offense, *see* U.S.S.G. § 5K2.6, because such an aggravating circumstance has not been given adequate consideration by the guidelines"); *United States v. Register*, 931 F.2d 308, 314 (5th Cir. 1991) ("This court has upheld upward adjustments for mere possession of a firearm") (citing *United States v. Otero*, 868 F.2d

---

[6]Our court has interpreted § 5K2.6 as referring "to crimes that may be committed with or without the use of a weapon". *United States v. Medina-Gutierrez*, 980 F.2d 980, 983 (5th Cir. 1992).

- 28 -

1412, 1414 (5th Cir. 1989); *United States v. Hewin*, 877 F.2d 3, 5 (5th Cir. 1989); *United States v. Mueller*, 902 F.2d 336, 345 (5th Cir. 1990)).

In addition to referencing § 5K2.6, the district court gave specific reasons for the extent of the departure, including its concern that an innocent bystander could have interrupted the staged robbery and been injured. These reasons are adequate; we find no abuse of discretion in the extent of the departure. *See Lee*, 989 F.2d at 183 (§ 5K2.6 departure will be upheld if extent is reasonable; district court not required to give specific or general reasons for extent).

7.

Finally, Serrano asserts that, because he was acquitted of the substantive bank fraud counts, the district court erroneously included in his $464,000 restitution (Merhan's is for $432,000) the $32,000 taken from a bank other than Wells Fargo. In any event, consistent with his loss calculation claim, he contends that he should not be ordered to repay an amount greater than the $60,000 he received after the staged robbery.

As discussed, the evidence was sufficient to find that Serrano conspired in both bank fraud and bank larceny. Concerning the

other bank, the district court relied properly on the PSR.  The restitution amount was not clearly erroneous.

### III.

In the light of the foregoing, Merhan and Serrano's convictions and sentences are

*AFFIRMED.*