Madeleine **CANDELARIO–DEL MORAL**, Plaintiff,

v.

**UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO**, Defendant.

Civil No. 08–1833 (SEC).

United States District Court, D. Puerto Rico.

April 29, 2013.

As Corrected May 8, 2013.

Opinion Denying Reconsideration June 11, 2013.

Stay Pending Appeal Denied June 27, 2013.

Jose Luis Ubarri–Garcia, David W. Roman, Ubarri & Roman, Judith Berkan, Mary Jo Mendez–Vilella, Berkan & Mendez, San Juan, PR, for Plaintiff.

Christopher N. Manning, Williams & Connolly LLP, Washington, DC, Enrique G. Figueroa–Llinas, Guillermo J. Bobonis, Bobonis, Bobonis & Rodriguez Poventud, San Juan, PR, for Defendant.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Before the Court are David Efron's motion to intervene under Fed.R.Civ.P. 24(a)(2) (Docket # 198), and the parties' response thereto. Dockets # 199 & 200. After reviewing the filings and the applicable law, Efron's motion to intervene is **DENIED.**

## Factual and Procedural Background

A comprehensive recitation of the procedural and factual background of this diversity tort suit case can be found in the First Circuit's recent opinion in *Candelario v. UBS*, 699 F.3d 93 (1st Cir.2012). Here, the Court recounts only those facts necessary to explain why putative intervenor David Efron's untimely petition must be denied. Suffice it to say that this case, which nears its fifth anniversary, is an offshoot of a broader and longstanding dispute between plaintiff Madeleine Candelario and Efron over the division of their "conjugal community property" following their divorce in 2001.

In this case, Candelario sues UBS Financial Services Incorporated of Puerto Rico ("UBS") under Puerto Rico's general tort statute, *see* P.R. Laws Ann. tit. 31, § 5141, for negligently releasing Efron's funds and paying off his credit-line account. Docket # 1. There is a related proceeding in state court regarding the division of the "conjugal community property" and another in the Puerto Rico Bankruptcy Court—Efron's bankruptcy proceedings. This federal action, more precisely, is a spillover of Candelario's efforts to collect on a state-court judgment that ordered Efron to make advance payments of community property to Candelario until a community property division could be made. *See Candelario*, 699 F.3d at 95–96. If, as Efron contends, Candelario has already received her share of the community property, the Puerto Rico Court of Appeals has made clear that she would not be entitled to retain any excess monthly payments, for these are merely advances on her share of the community property. *Candelario v. Efron*, KLRX–10–000024, 2010 WL 3200139, at *6 (P.R. Cir. Apr. 30, 2010) (translation provided by the parties at Docket # 110–1, p. 38). A crucial determination in this case, then, relates to the amounts Candelario has received, and whether she has been made whole by such payments. *Id.*

On January 13, 2010, the Court entered summary judgment against UBS. *Candelario del Moral v. UBS Financial Services Inc. of Puerto Rico*, 691 F.Supp.2d 291 (D.P.R.2010). Later that month, UBS "informed Efron that it intended to seek indemnification from him

if the Court's ruling were upheld on appeal." Docket # 200, p. 3. Under the terms of Efron's master account agreement, UBS maintains that Efron is obliged to indemnify UBS for any claims relating to his accounts, including for any settlements, judgments, or damages incurred by UBS. *Id.* Then, on July 28, 2011, UBS filed a proof of claim in Efron's bankruptcy proceedings to assert a claim for its litigation expenses in this case, and a contingent claim for indemnification of any settlements or judgment that might be incurred. Docket # 161–2.

On November 9, 2012, the First Circuit vacated this court's summary judgment ruling and remanded the case for further proceedings. *See Candelario,* 699 F.3d at 107. A status conference was held soon thereafter, during which the parties discussed the First Circuit's recommendation that "this is a case best resolved by settlement," *id.,* and this court's suggestion that the parties mediate the claims. Minutes of January 17, 2013, Case Management and Status Conference, at Docket # 182, p. 1 (D.P.R. Jan. 17, 2013). As the Court and the parties agreed, "ascertaining the precise underlying liability from Efron to Candelario was crucial" to any meaningful assessment of damages or settlement. *Id.,* p. 2. After UBS and Candelario picked a mediator, the Court entered a mediation order setting an April 30, 2013 deadline to conclude mediation. Docket # 193.

In the same time frame, UBS counsel contacted Efron to inform him that the case had been referred to mediation. Correspondence was then exchanged between UBS and Efron. Efron apparently disagreed with UBS's position that his account agreement does not give him any right to participate in or control UBS's litigation, and that UBS's right to indemnification for a settlement is not conditioned on his approval. On March 4, 2013, UBS counsel informed Efron that UBS intended to proceed with the March 5 mediation in good faith, and that UBS reserved the right to enter into a reasonable settlement with Candelario in its sole discretion. UBS also reiterated that Efron's "ac-

count agreement does not condition UBS's right to indemnification on Efron's advance authorization or approval," and that, if UBS did enter into a settlement with Candelario, it intended to enforce its right to indemnification from Efron. Docket # 198–2.

Efron filed the instant motion one week later, on March 11, 2013. Docket # 198. He seeks to intervene pursuant to Fed.R.Civ.P. 24(a)(2) (intervention as of right) and requests a 30–day stay of the mediation and other proceedings, so that he may obtain leave of the bankruptcy court to retain counsel. Docket # 198.[1] "[I]n order to avoid further miscarriages of justice and further appellate reversals of judgments in this case," Efron maintains, he "should be allowed to intervene based on Rule 24(a)(2) of the Federal Rules of Civil Procedure." *Id.,* p. 2. It appears, furthermore, that Efron attempts to justify his motion on the basis that he "disagrees" with UBS's stated position. He also asserts, without explaining why, that he is a "major player in this case and *could be* the principally affected party in the results of the same." *Id.,* p. 1 (emphasis added).

Candelario timely opposed. She alleges that Efron's motion "utterly fails to comply with the requirements for intervention." Docket # 199, p. 1. She specifically posits that Efron's request for intervention fails for the following reasons: (1) his application is untimely; (2) he cannot show that "his ability to protect his interest will be impaired by the instant litigation"; and (3) "he failed to follow the procedural rules related to intervention requests." *Id.,* p. 4. UBS, for its part, "takes no position" on Efron's motion, explaining that, irrespective of whether Efron is permitted to intervene, it "intends to call Efron as a witness to offer evidence regarding whether Candelario has been made whole by the amounts she has received." Docket # 200, pp. 6–7. UBS acknowledges, however, that a "key question" is whether Efron's motion to intervene is timely. *Id.,* p. 1.

---

1. As of today, no counsel has appeared on behalf of Efron. To the extent that over 30 days have already elapsed since Efron filed his motion on March 11, 2013, his perfunctory request for a 30–day stay of the proceedings is denied, and in any event, because his request to intervene fails, so must his concomitant motion to stay the proceedings.

### Standard of Review

■ It is common ground that there are two strands of intervention: Intervention as of right, Fed.R.Civ.P. 24(a), and permissive intervention, Fed.R.Civ.P. 24(b). Insofar as Efron styles his motion as a motion to intervene as of right, *see* Docket 188 (expressly invoking Fed.R.Civ.P. 24(a)(2)), the Court "cabin[s] . . . [the] discussion accordingly." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011) (citing *Negrón–Almeda v. Santiago*, 528 F.3d 15, 21 (1st Cir.2008)).[2]

Intervention as of right is regulated by Federal Rule of Civil Procedure 24(a), which provides as follows:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

■ Interpreting this rule, the First Circuit has in turn distilled the following requirements: (1) the timeliness of the motion to intervene; (2) the existence of an interest regarding the property or transaction that forms the basis of the pending action; (3) a realistic threat that the disposition of the action will impede the movant's ability to protect that interest; and (4) the lack of adequate representation of his position by any existing party. *Puerto Rico Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*, 637 F.3d 10, 14 (1st Cir.2011); *Nextel Communications of Mid-*

Atlantic, Inc. v. Town of Hanson, 311 F.Supp.2d 142, 150 (D.Mass.2004).

■ In order to prevail, a would-be intervenor must meet *each* one of these requirements, as "failure to satisfy *any* one of them defeats intervention." *Ungar*, 634 F.3d at 51 (citing *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544–45 (1st Cir. 2006); *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir.1998) (emphasis added)). When analyzing a motion to intervene as of right, moreover, courts must apply a "holistic, rather than a reductionist, approach," and keep in mind "a commonsense view of the overall litigation." *Patch*, 136 F.3d at 204 (citing *United States v. Hooker Chems. Plastics Corp.*, 749 F.2d 968, 983 (2d Cir.1984) (Friendly, J.)). Since the particular facts of the case are essential to determine an intervenor's rights, "the very nature of a Rule 24(a)(2) inquiry limits the utility of comparisons between and among published opinions." *Id.*

### Applicable Law and Analysis

*Timeliness*

■ Because the timeliness inquiry is a "prevenient question" that "stands as a sentinel at the gates whenever intervention is requested and opposed," *R & G Mortgage Corp. v. Fed. Home Loan Mortgage Corp.*, 584 F.3d 1, 7 (1st Cir.2009) (quoting *Banco Popular v. Greenblatt*, 964 F.2d 1227 (1st Cir.1992) (internal quotation marks omitted)), the analysis begins here.[3] This threshold determination, which "is inherently fact-sensitive and depends on the totality of the circumstances," involves the following 4 considerations:

---

**2.** By parity of reasoning, Efron has waived "any claim for permissive intervention." *Id.* at 50 n. 3.

**3.** It is worth noting, as Candelario correctly points out, that Efron's motion to intervene was never "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c). This noncompliance, without more, suffices to deny his motion on procedural grounds. *See Brown v. Colegio de Abogados de Puerto Rico*, 277 F.R.D. 73, 76 (D.P.R.2011) (denying motion to intervene that was not accompanied by pleading setting forth putative intervenor's claims and defenses); *ac-*

cord *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783–84 (1st Cir.1988) ("The language of . . . [Rule 24(c)] is mandatory, not permissive, and the rule sets forth reasonable procedural requirements to insure that claims for intervention are handled in an orderly fashion."). While the Court in no way excuses such "dereliction [that] ordinarily would warrant dismissal" of the motion to intervene, *see Public Service Company of New Hampshire v. Patch*, 136 F.3d 197, 205 n. 6 (1st Cir.1998), the Court nonetheless entertains (and denies) Efron's motion on the merits as well.

(i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention. *Id.* (citing *Greenblatt,* 964 F.2d at 1230–31)

Each of these elements, the First Circuit has explained, "must be appraised in light of the posture of the case at the time the motion is made." *Id.* (citing *Geiger v. Foley Hoag LLP Ret. Plan,* 521 F.3d 60, 65 (1st Cir. 2008)). It is therefore no surprise that, "as a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies." *Id.* As relevant here, the timeliness requirement is "often applied less strictly with respect to intervention as of right." *Id.* (citing *Navieros Inter–Americanos, S.A. v. M/V Vasilia Express,* 120 F.3d 304, 320 (1st Cir.1997)). But even in the case of a motion to intervene as of right, the timeliness requisite "retains considerable bite." *Id.*

■ Efron neither mentions nor applies the timeliness factors. Candelario, for her part, argues that "there is, quite simply, no way for Efron to demonstrate the timeliness of his request." Docket # 199, p. 9. The Court agrees with Candelario's persuasive contention, which Efron does not even attempt to rebut. And because this is an easy call, the Court conducts a succinct timeliness inquiry in turn.[4]

The first factor—the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene—weighs heavily against intervention. To begin with, this case was filed in August of 2008—almost 5 years ago. Docket # 1. And even assuming, dubitante, that Efron was never privy to the filing of the action in 2008, in January 2010, at the very least, "he obtained actual or constructive notice that a pending case

threatens to jeopardize his rights." *R & G Mortgage Corp.,* 584 F.3d at 8 (citing *Greenblatt,* 964 F.2d at 1231; *Caterino v. Barry,* 922 F.2d 37, 40–41 (1st Cir.1990)). As previously noted, following the January 2010 judgment, "UBS informed Efron that it intended to seek indemnification from him if the Court's ruling were upheld on appeal." Docket # 200, p. 3 (referring to the January 2010 judgment). Alternatively, it is beyond peradventure that Efron knew about this action on July 28, 2011, when UBS filed a Proof of Claim in his own bankruptcy proceedings. Under either scenario, the delay is unjustifiable. Efron, a seasoned attorney, has made no attempt to explain why he procrastinated for 2 years to intervene. He does not argue, for instance, that there are any special circumstances that would excuse his dilatory conduct. *See R & G Mortgage Corp.,* 584 F.3d at 8 (noting that "[t]he passage of time is measured in relative, not absolute, terms," so what "may constitute reasonably prompt action in one situation may be unreasonably dilatory in another"). And, to be sure, there are no special circumstances here in any event.

In short, a delay of 2 years after Efron irrefragably knew that UBS intended to seek indemnification from him is an inordinate amount of time—at least, where as here, there are no peculiar circumstances that would justify such a lack of diligence. Efron's motion is thus unreasonably late. *Compare, e.g., id.* at 8–9 (affirming district court's determination "that a delay of two and one-half months after ... [the defendant] knew of the incipient problem ... was inexcusable"); *Greenblatt,* 964 F.2d at 1231 (finding putative intervenor's "failure to act for over three months, though armed with full knowledge, to be inexpiable"). *Cf. United States v. Taylor,* 54 F.3d 967, 972 (1st Cir.1995) (reiterating that, as a general matter, "the law ministers to the vigilant, not to those who sleep upon perceptible rights").

The same holds true for the second and

---

4. Because neither party has requested a hearing on Efron's motion to intervene, and because "it is clear from the face of the application that the motion must be denied," *Center for Biological Diversity v. Berg,* 268 F.3d 810, 820 (9th Cir. 2001) (quoting 7C Wright, Miller, & Kane § 1914 (2d ed. 1986)), a hearing is unnecessary.

third elements.[5] Allowing Efron's belated petition to intervene would further delay this soon-to-be 5–year–old case; such a hangup would in turn prejudice Candelario "in the form of undue delay." *Blount–Hill v. Zelman*, 636 F.3d 278, 286–87 (6th Cir.2011). Recall that, by the time Efron moved to intervene, the parties had already been in the midst of a post-appeal mediation. In fact, the mediation is scheduled to conclude tomorrow, April 30, 2013. *See* Docket # 193. That Efron seeks to intervene at this particular juncture—at a time when the parties have been having meaningful settlement talks or, alternatively, bring this case to trial promptly—supports the reasonable inference that the motion is a "tactical attempt to thwart [a potential] settlement rather than participate in the litigation." *R & G Mortgage Corp.*, 584 F.3d at 9; *cf. Del Moral v. UBS Fin. Servs. Inc. of Puerto Rico*, 815 F.Supp.2d 495, 507 (D.P.R.2011) ("[T]he record shows that each time that Candelario has appeared to make inroads on Efron, he has managed to turn the tables on her."). On the other hand, Efron's perfunctory claim of prejudice should intervention be denied is wholly unconvincing. As a threshold matter, Efron's motion to intervene, which contains no case law, fails to abide by the First Circuit's "oft-quoted maxim that litigants should not seriously expect to obtain a remedy without doing the necessary leg work first." *Silverstrand Investments v. AMAG Pharmaceuticals, Inc.*, 707 F.3d 95, 107 (1st Cir.2013) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). This contention is thus summarily rejected. *See, e.g., Rodriguez–Machado v. Shinseki*, 700 F.3d 48, 49 (1st Cir.2012) (per curiam).

The same conclusion would follow even if the Court considered Efron's sole and fatally undeveloped hypothetical that "he is a major player in this case and *could be* the principally affected party in the results of the same." Docket # 198, p. 1 (emphasis added). Even assuming, arguendo, that denying his request

for intervention would prejudice Efron, such a prejudice would not be significant, as Efron "still has an adequate remedy." *R & G Mortgage Corp.*, 584 F.3d at 10. As correctly observed by Candelario, there will be no res judicata, so Efron will be free to continue challenging Candelario's alleged entitlement to her share of the community property. If and when UBS files an action against Efron to recover any amounts it may have to disburse here, Candelario correctly points out, Efron would nonetheless be free to raise any defense he may have to such an action, as nothing in this case would preclude him from doing so. "The availability of an adequate alternative remedy softens any plausible claim of prejudice." *Id.* (citation omitted).

The fourth and final element of the timeliness inquiry requires an assessment of whether any special circumstances "militat[e] in favor, or against, intervention." *Greenblatt*, 964 F.2d at 1233. Here, "the balance is unaffected." *Id.* While Efron does not even attempt to identify any special circumstances that would warrant intervention, there appears to be no such unusual circumstances cutting against intervention either.

It follows inexorably that every single factor points in the same direction: Efron has failed to shoulder his burden of demonstrating that his motion to intervene is timely. And his failure is unsurprising. The record reflects undue delay by Efron, a would-be intervenor with complete knowledge that his rights were in peril. "The record also reflects an unfavorable balance of harms and an absence of ameliorating circumstances." *R & G Mortgage Corp.*, 584 F.3d at 10. Having concluded that Efron cannot meet the timeliness requirement, the Court need not "consider whether other conditions for intervention under Rule 24 were satisfied." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 369, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973).

---

**5.** For ease of analysis, these factors—the prejudice to existing parties should intervention be allowed, and the prejudice to the putative intervenor should intervention be denied—are considered together. *See, e.g., R & G Mortgage Corp.*, 584 F.3d at 9 (conglomerating discussion of second and third elements, reasoning they "involve the balance of harms"); *Walgreen Co. v. de Melecio*, 194 F.R.D. 23, 26 n. 2 (D.P.R.2000) *aff'd sub nom. Walgreen Co. v. Feliciano de Melecio*, 6 Fed.Appx. 27 (1st Cir.2001) (same).

## Conclusion

For the reasons stated, Efron's motion to intervene is **DENIED**.

**IT IS SO ORDERED.**

## OPINION AND ORDER

Before the Court are putative intervenor David Efron's motion for reconsideration (Docket # 212), and the parties' responses thereto (Dockets # 218 & 225). After reviewing the filings and the applicable law, Efron's motion for reconsideration is **DENIED**.

### Factual and Procedural Background

On April 29, 2013, the Court denied Efron's motion to intervene under Federal Rule of Civil Procedure 24(a)(2) (intervention as of right). *Candelario v. UBS Fin. Servs. Inc.*, 290 F.R.D. 336, 2013 WL 1791024 (D.P.R.2013) (to be published in F.R.D.). In a nutshell, the Court held that Efron's motion, which had failed to comply with the procedural requirements mandated by Federal Rule of Civil Procedure 24(c), *see id.* at 340 n. 3, was untimely. *See, e.g., id.* at 342 ("The record reflects undue delay by Efron, a would-be intervenor with complete knowledge that his rights were in peril."). Because Efron could not "meet the timeliness requirement," the opinion stated, the Court declined to " 'consider whether other conditions for intervention under Rule 24 were satisfied.' " *Id.* (quoting *Nat'l Ass'n for Advancement of Colored People v. New York,* 413 U.S. 345, 369, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973)).

On May 20, 2013, Efron filed the instant motion for reconsideration (presumably under Rule 59(e)), arguing in pertinent part that his motion to intervene "is timely." Docket # 212, p. 3. He also (again) requests additional time to obtain counsel and asks this court to order a "30–day moratorium on any settlement negotiations" or court hearings. *Id.,* p. 5. The plaintiff timely opposed. Docket # 218. She says that Efron's motion should be denied, because it "fails to address the legal reasoning set forth ... in this court's ruling on the matter." *Id.,* p. 5. "Instead of analyzing the criteria applicable to intervention, and without filing the re-

quired pleading under Rule 24," the plaintiff further maintains, Efron "prefers to dedicate his efforts to besmirching [the plaintiff], accusing her of being violent, abandoning her children, [and] living high off the hog...." *Id.*

Exhibiting its characteristic neutrality, defendant UBS Financial Services Incorporated of Puerto Rico (UBS) also responded. Docket # 225. Because it "intends to call Efron as a witness, regardless of whether he is allowed to intervene, UBS takes no position on Efron's motion for reconsideration." *Id.,* p. 3. UBS nonetheless makes some key factual corrections. As relevant here, UBS properly rebuts Efron's incorrect contention that the "first time" he was advised that "he would be liable for any settlement between the parties in this case" was on March 4, 2013. *Id.,* p. 1 (citing Docket # 212, p. 2). Setting the record straight, UBS correctly states that it "has repeatedly reminded Efron of its intention to hold him accountable for this obligation, including after the Court's prior summary judgment ruling in January 2010, again in its July 2011 proof of claim in Efron's bankruptcy proceeding, and again in February and March of this year." *Id.,* pp. 1–2 (citations omitted).

### Standard of Review

 "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.' " *Palmer v. Champion Mortg.,* 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted). It is common ground that the moving party "must 'either clearly establish a manifest error of law or must present newly discovered evidence.' " *Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 7 n. 2 (1st Cir.2005) (quoting *Pomerleau v. W. Springfield Pub. Sch.,* 362 F.3d 143, 146 n. 2 (1st Cir.2004)). It is also well settled that "[a] motion for reconsideration is not a vehicle for the introduction of arguments that could and should have been made to the district court earlier." *Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc.,* 682 F.3d 26, 33 (1st Cir.2012). Nor does Rule 59(e) "provide a vehicle for a party to undo its own procedural failures." *Aybar v. Crispin–Reyes,* 118 F.3d 10, 16 (1st

Cir.1997) (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996)).

## Applicable Law and Analysis

As said, Efron argues that this court should reconsider its denial of his motion for intervention. This request is without merit. The short answer is that Efron neither argues that the denial of his motion to intervene was a manifest error of law nor does he present newly discovered evidence. Rather, for the first time in this litigation, he simply maintains—without much in the way of an argument—that his motion to intervene "is timely." Docket # 212, p. 2. Shockingly, he again "neither mentions nor applies the timeliness factors," 290 F.R.D. at 341, as adopted by the First Circuit in the normative *Culbreath v. Dukakis*, 630 F.2d 15, 20 (1st Cir. 1980)—thus making waiver applicable. *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990). Nor does he even attempt to comply with Rule 24(c)'s *mandatory* procedural requirements, *see Public Service Company of New Hampshire v. Patch*, 136 F.3d 197, 205 n. 6 (1st Cir.1998); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783–84 (1st Cir.1988), which provided yet another ground to deny his undeveloped and unpersuasive request for intervention. *See* 290 F.R.D. at 340 n. 3. The upshot is that Efron's request for reconsideration is plainly unwarranted.

The Court need not spill more ink on this matter. Because Efron's motion for reconsideration falls way short of showing that the court erred as a matter of law or fact, it is **DENIED.** Needless to say, Efron's unfounded request for "30–day moratorium on any settlement negotiations" or court hearings is also **DENIED.** *See* 290 F.R.D. at 343 n. 1.

## Conclusion

For the reasons stated, Efron's motion for reconsideration is **DENIED.**

## IT IS SO ORDERED.

## OPINION AND ORDER

Before the Court are putative intervenor David Efron's "Urgent Motion for Stay Pending Appeal" (Docket # 221), and the parties' responses thereto. Dockets # 222 & 224. After reviewing the filings and the applicable law, Efron's motion is **DENIED.**

## Factual and Procedural Background

On April 29, 2013, the Court denied Efron's motion to intervene under Federal Rule of Civil Procedure 24(a)(2). *Candelario–Del Moral v. UBS Fin. Servs. Inc.*, 290 F.R.D. 336, 2013 WL 1791024 (D.P.R. Apr.29, 2013), *reconsideration denied.* The Court held that Efron's motion to intervene had (1) failed to comply with the procedural requirements mandated by Fed.R.Civ.P. 24(c); and (2) been untimely, *see id.* at 340 n. 3 & 342; *see also* 290 F.R.D. at 338. Unhappy with this determination, on May 28 Efron filed a notice of appeal from the denial of his motion to intervene. Docket # 217.

Shortly thereafter, he filed the instant motion to stay the proceedings pending his appeal, arguing that he "satisfies and meets the necessary factors for the issuance of a stay." Docket # 221, p. 1. Notably, for the first time in this litigation, Efron conducts a "brief analysis" of the "elements of intervention as of right. . . ." *Id.*, p. 4.

Arguing that Efron's motion to stay "utterly fails to show" how the traditional four-part standard governing stays pending appeal "favors his request for a stay," the plaintiff opposed. Docket # 222, p. 1. Consistent with its "characteristic neutrality," *Candelario–Del Moral*, 290 F.R.D. at 343, the defendant "takes no position" on Efron's motion to stay. Docket # 224, p. 1.

## Standard of Review

"A party requesting injunctive relief pending appeal bears the burden of showing that the circumstances of the case justify the exercise of the court's discretion." *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir.2010); *Whalen v. Roe*, 423 U.S. 1313, 1316, 96 S.Ct. 164, 46 L.Ed.2d 18 (1975) (Marshall, J., in chambers). The determination whether to grant a stay pending appeal is controlled by the traditional quadruple test applicable to preliminary injunctions: (1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent injunctive relief; (3) whether issuance

of the stay will injure other parties; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776–77, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)); *Joubert–Vázquez v. Alvarez–Rubio*, 841 F.Supp.2d 570, 573 (D.P.R.2012).

██ The first two factors, the Supreme Court recently made clear, "are the most critical." *Nken*, 556 U.S. at 434, 129 S.Ct. 1749. Because both of these factors "require a showing of more than mere possibility," the movants "must show a strong likelihood of success, and they must demonstrate that irreparable injury will be likely absent … [a stay]." *Respect Maine PAC*, 622 F.3d at 15. "The sine qua non [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits." *Acevedo–Garcia v. Vera–Monroig*, 296 F.3d 13, 16 (1st Cir.2002) (per curiam) (quoting *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir.1993)); *Rivera–Torres v. Ortiz Vélez*, 341 F.3d 86, 95 (1st Cir.2003). Accordingly, "[w]hat matters … is not the raw amount of irreparable harm [a] party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits…." *In re Elias*, 182 Fed.Appx. 3, 4 (1st Cir.2006) (citation and internal quotation marks omitted); *United Steelworkers of America v. Textron, Inc.*, 836 F.2d 6, 7 (1st Cir.1987).

### Applicable Law and Analysis

██ As noted above, as the proponent of the stay Efron "bears the burden of showing that the circumstances justify an exercise" of this court's judicial discretion. *Nken*, 556

U.S. at 418, 129 S.Ct. 1749. He comes nowhere close to satisfying this burden.

The analysis starts and ends with the first and second factors. Efron has not made a "strong showing" of success on the merits. As a threshold matter, his appeal will, in all likelihood, fail to reach first base. Court of Appeals do not take lightly a party's failure to provide *nisi prius* courts with developed arguments. *See, e.g., Curet–Velázquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 54 (1st Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1863, 182 L.Ed.2d 644 (2012).[1] And this is for good reason: "Overburdened trial judges cannot be expected to be mind readers," *McCoy v. Massachusetts Inst. of Techn.*, 950 F.2d 13, 22 (1st Cir.1991), so "litigants should not seriously expect to obtain a remedy without doing the necessary leg work first." *Silverstrand Investments v. AMAG Pharmaceuticals, Inc.*, 707 F.3d 95, 107 (1st Cir.2013). This principle could be dispositive here, where Efron's motion to intervene neither presented nor analyzed any applicable legal authority—in fact, Efron's motion "cite[d] no caselaw at all." *Machado v. Shinseki*, 700 F.3d 48, 49 (1st Cir.2012) (per curiam). To make matters worse, Efron's request completely ignored "the timeliness factors," *Candelario–Del Moral*, 290 F.R.D. at 341, as adopted by the First Circuit in the normative *Culbreath v. Dukakis*, 630 F.2d 15, 20 (1st Cir.1980).[2]

But even if the First Circuit were to excuse these fatal flaws, it cannot be said, as Efron maintains in a perfunctorily manner, that his request for intervention has a "strong position" on the merits. Docket # 221, p. 4. Quite the opposite is true:

---

1. *See also, e.g., Rocafort v. IBM Corp.*, 334 F.3d 115, 122 (1st Cir.2003) ("Passing reference to legal phrases and case citation without developed argument is not sufficient to defeat waiver." (citing *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 34 (1st Cir.2001))); *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1526 (1st Cir.1996) (three sentences with three undiscussed citations did not defeat waiver); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) (reiterating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); D.P.R. Civ. R. 7(a) ("All matters submitted to the Court for consideration shall be presented by written motion filed with the clerk

incorporating a memorandum of law, *including citations and supporting authorities* ….") (emphasis added).

2. Efron's "pro se" status does not insulate him from complying "with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir.1997). "[W]hile pro se litigants are held to a less stringent standard … they are not immune" from waiver resulting from undeveloped arguments. *Watson v. Trans Union LLC*, 223 Fed.Appx. 5, 6 (1st Cir.2007) (per curiam). These principles are even more demanding here, where Efron, an experienced litigator, is not the usual pro se litigant.

Efron's motion to intervene is meritless. Efron, an experienced and resourceful member of this bar, neglected to even comply with Rule 24(c)'s *mandatory* requirements, *see, e.g., Public Service Company of New Hampshire v. Patch*, 136 F.3d 197, 205 n. 6 (1st Cir.1998), "which provided yet another ground to deny his undeveloped and unpersuasive request for intervention." *Candelario–Del Moral*, 290 F.R.D. at 344. More important, the fact remains that Efron cannot explain "why he procrastinated for 2 years to intervene." *Candelario–Del Moral*, 290 F.R.D. at 341. "A delay of 2 years after Efron irrefragably knew that UBS intended to seek indemnification from him," the Court hereby reiterates, "is an inordinate amount of time...." *Id.* In short, Efron's motion to intervene cannot meet the timeliness requirement, which "stands as a sentinel at the gates whenever intervention is requested and opposed." *R & G Mortgage Corp. v. Fed. Home Loan Mortgage Corp.*, 584 F.3d 1, 7 (1st Cir.2009) (internal quotation marks and citations omitted).

There is, however, an added wrinkle. As stated previously, Efron addresses—for the first time—the factors applicable to motions to intervene, including timeliness. As relevant here, he posits that "the triggering event making his motion to intervene timely was the March 4, 2013 letter he received from.... [UBS] indicating that Intervenor David Efron would be liable for any settlement between the Plaintiff ... and Defendant in this case." Docket # 221, p. 3. But Efron's last ditch attempt is too little, too late. And in any event, his *ipse dixit* is supported neither by caselaw, *see, e.g., Narragansett Indian Tribe v. Ribo, Inc.*, 868 F.2d 5, 7 (1st Cir.1989) ("Parties having knowledge of the pendency of litigation which *may* affect their interest sit idle at their peril.") (emphasis added) nor by the record, *see Candelario–Del Moral*, 290 F.R.D. at 343 ("Setting the record straight, UBS correctly states that it has repeatedly reminded Efron of its intention to hold him accountable ... including after the ... summary judgment ruling in January 2010, [and] again in its July 2011 proof of claim in Efron's bankruptcy proceeding ....") (citations and internal quotation marks omitted).

Neither can Efron shoulder his burden of showing that he will suffer irreparable harm absent a stay. Efron's perfunctory and wholly undeveloped averment that he will "suffer irreparable injury should the instant case proceed," Docket # 221, p. 4, "makes waiver a real possibility." *Candelario Del Moral v. UBS Fin. Servs. Inc. of Puerto Rico*, 699 F.3d 93, 101 (1st Cir.2012). It also fails on the merits; for it simply cannot be said that the First Circuit's decision will "come too late for the party seeking review." *Nken*, 556 U.S. at 421, 129 S.Ct. 1749 (quoting *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9–10, 62 S.Ct. 875, 86 L.Ed. 1229 (1942)). That is so because the mediation has since concluded without settlement, *see* Dockets # 210 & 211, so the chances of settlement appear to be considerably lower than when Efron moved to intervene. Given the approval of the parties' "joint proposed schedule," Docket # 220, moreover, trial will not start until at least March 2014. What is more, the defendant has made clear that it "intends to call Efron as a witness regardless of whether or not he is permitted to intervene," Docket # 225, so Efron's protestations will most likely be heard at trial.

In any event, if Efron thinks that the appellate outcome will come too late, he could always petition the First Circuit to "expedite[ ] the appeal ... [by arguing that there is a] need for an urgent resolution." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 108 (1st Cir. 1999); *see, e.g., Jimenez–Fuentes v. Torres Gaztambide*, 807 F.2d 230, 231 (1st Cir.1985) (denying stay but granting "an expedited appeal"), *on reh'g sub nom.*, 807 F.2d 236 (1st Cir.1986). In sum, because there is no threat (imminent or otherwise) of irreparable injury here, Efron cannot meet the second factor.

■ Given Efron's failure to meet his burden under the first two factors, "an analysis of the other factors ... would be supererogatory." *Weaver v. Henderson*, 984 F.2d 11, 14 n. 5 (1st Cir.1993); *accord Nken*, 556 U.S. at 436, 129 S.Ct. 1749 ("*Once* an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the

harm to the opposing party and weighing the public interest.") (emphasis added). *See also Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317, 104 S.Ct. 3, 77 L.Ed.2d 1417 (1983) (Blackmun, J., in chambers). The Court nonetheless notes that staying the proceedings pending appeal would "further delay this soon-to-be 5–year–old case; such a hang-up would in turn prejudice the plaintiff 'in the form of undue delay.'" *Candelario–Del Moral*, 290 F.R.D. at 342 (quoting *Blount–Hill v. Zelman*, 636 F.3d 278, 286–87 (6th Cir.2011)). Finally, the public interest lies in avoiding delays, resolving the parties' dispute expeditiously, and in the productive use of limited judicial resources. *See Jarboe v. Yukon Nat'l Bank (In re Porter)*, 54 B.R. 81, 82 (Bankr.N.D.Okla.1985) ("The public interest, though difficult to measure in a case involving primarily private rights, is generally served by moving forward."); *see also* Fed. R.Civ.P. 1. And a stay would further none of these interests. Accordingly, the third and fourth factors likewise militate against a stay.

### Conclusion

For the reasons stated, Efron's "Urgent Motion for Stay Pending Appeal" is **DENIED.**

**IT IS SO ORDERED.**