# United States Court of Appeals
## For the First Circuit

No. 13-1765

IN RE DAVID EFRON,

Movant, Appellant.

———————————————

MADELEINE CANDELARIO-DEL-MORAL,

Plaintiff, Appellee,

v.

UBS FINANCIAL SERVICES INCORPORATED
OF PUERTO RICO,

Defendant, Appellee.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

———————————————

Before

Howard, Selya and Lipez,
Circuit Judges.

———————————————

David Efron pro se.
Judith Berkan, with whom Mary Jo Méndez and Berkan/Méndez were
on brief, for plaintiff-appellee.
Enrique G. Figueroa-Llinás, with whom Christopher N. Manning,
Ashley W. Hardin, and Williams and Connolly LLP were on brief, for
defendant-appellee.

———————————————

March 21, 2014

———————————————

**SELYA, Circuit Judge.** For over four centuries, persons learned in the law have known that, when litigation is in prospect, vigilance is good and somnolence is bad. Commentators and courts have phrased this sentiment in different ways. See, e.g., In re Wood, [1883] 23 Ch.D. 644 at 653 (Eng.) ("It is a reasonable presumption that a man who sleeps upon his rights has not got much right."); Edmund Wingate, Maxims of Reason (1658) ("Laws come to the assistance of the vigilant, not of the sleepy."). The lesson to be derived is that "[t]he law ministers to the vigilant not to those who sleep upon perceptible rights." Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir. 1987). This appeal illustrates the wisdom of that statement.

## I.   BACKGROUND

This appeal has its genesis in the district court's denial of a motion to intervene. We touch upon the rudiments of the underlying dispute only so far as necessary to put the appeal into a workable perspective. Where, as here, a putative intervenor neglects to submit a proposed pleading with his motion to intervene, see Fed. R. Civ. P. 24(c), we rely on facts made manifest in the record as a whole, see B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006). The reader who thirsts for more exegetic detail may consult the litany of prior opinions in this case. See, e.g., Candelario-Del-Moral v. UBS Fin. Servs. Inc. (Candelario II), 699 F.3d 93, 95-99 (1st Cir.

2012); <u>Candelario-Del-Moral</u> v. <u>UBS Fin. Servs. Inc.</u> (<u>Candelario III</u>), 290 F.R.D. 336, 338-39 (D.P.R. 2013); <u>Candelario-Del-Moral</u> v. <u>UBS Fin. Servs. Inc.</u> (<u>Candelario I</u>), 691 F. Supp. 2d 291, 294-300 (D.P.R. 2010).

The putative intervenor, David Efron, and his former wife, Madeleine Candelario-Del-Moral, have been engaged in acrimonious and long-running litigation related to their high-stakes divorce. At one time, Efron had more than $11,000,000 in accounts at UBS Financial Services Inc. (UBS). In October of 2006, a Puerto Rico court in which the divorce proceedings were pending issued an order effectively attaching the funds held in Efron's UBS accounts. Soon thereafter, the court made a ruling that may or may not have sufficed to vacate the attachment. <u>See</u> <u>Candelario II</u>, 699 F.3d at 101-04 (describing reasons for uncertainty about the effect of the ruling). UBS, at Efron's urging, treated the attachment as void and dispersed the bulk of the funds. By the time the matter was clarified, there were insufficient funds remaining to satisfy Candelario's demands.

Candelario took umbrage. She repaired to the federal district court, invoked diversity jurisdiction, <u>see</u> 28 U.S.C. § 1332(a), and sued UBS for negligently releasing the attached funds. After considerable skirmishing, the district court, ruling on cross-motions for summary judgment, awarded Candelario nearly $4,000,000. <u>Candelario I</u>, 691 F. Supp. 2d at 304. Both parties

appealed.  We held that summary judgment was premature and remanded the case for further proceedings.  Candelario II, 699 F.3d at 105-06, 107.

We digress for a moment.  The suit brought by Candelario against UBS was only one of several cases touching upon the couple's tangled affairs.  Pertinently, Efron filed for bankruptcy protection in March of 2011.  The bankruptcy proceeding is relevant here because, on July 28, 2011, UBS filed a contingent proof of claim seeking indemnification for any sums paid to Candelario by way of judgment or settlement in her tort case against UBS.  This right of indemnification, UBS asserted, flowed from the provisions of its account agreement with Efron (an agreement that dated back to 2002).

We return now to the tort case.  Following our remand, Candelario and UBS, at the district court's suggestion, opted to undertake mediation.  On March 4, 2013, UBS sent Efron an electronic letter informing him that it had scheduled the first mediation session for the next day and reiterating that it would seek indemnification if a settlement was achieved.  One week later, Efron — a veteran trial lawyer, proceeding pro se — moved to intervene as of right in the Candelario-UBS litigation.  Candelario opposed Efron's motion.[1]

---

[1] In the court below, UBS professed neutrality as to Efron's motion.  In its appellate brief, however, UBS argued that the district court did not abuse its discretion in denying the motion.

-4-

The district court noted that Efron's motion to intervene failed to comply with mandatory procedural requirements in that it was not accompanied by a proposed pleading. See Candelario III, 290 F.R.D. at 340 n.3 (citing Fed. R. Civ. P. 24(c)). Although the court acknowledged that it could deny the motion on this procedural ground alone, it nonetheless elected to go further, see id.; see also Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 783-84 (1st Cir. 1988) (noting that a district court may elect to entertain a procedurally deficient motion to intervene), and denied the motion on the merits, see Candelario III, 290 F.R.D. at 340 n.3. Efron appeals.

## II. ANALYSIS

This appeal raises three issues, which the parties present in a series of back-and-forth volleys. First, Candelario claims that we lack appellate jurisdiction to review the denial of intervention here and now. Second, Efron claims that the district court improvidently denied the motion to intervene. Third, Candelario claims that Efron's prosecution of the appeal is sanctionable. We examine these issues one by one.

### A. Appellate Jurisdiction.

We start with the jurisdictional question. For the most part, interlocutory rulings are not immediately appealable but must

---

But at oral argument, UBS's counsel seemed to revert to its original position.

-5-

be held in abeyance until the entry of final judgment.  See Torres v. Puerto Rico, 485 F.3d 5, 8 (1st Cir. 2007); see also 28 U.S.C. § 1291.  But this general rule, like virtually every general rule, admits of exceptions.  One such exception, established beyond hope of contradiction, holds that the courts of appeals have jurisdiction, on an interlocutory basis, to review the denial of motions to intervene as of right.  See, e.g., Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998).

In federal civil cases, intervention as of right is governed by the provisions of Federal Rule of Civil Procedure 24(a).  That rule authorizes the district court to allow intervention by any person or entity who, by a timely motion, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  Efron's motion was styled as a motion to intervene as of right and appears to make a colorable showing of the elements prescribed by Rule 24(a)(2).

Candelario counters that Efron never adequately identified how his interest in this case would be impaired by his exclusion from it.  The central premise of her argument is that this shortcoming, compounded by Efron's failure to annex a proposed

-6-

pleading to his motion, somehow converted his motion to intervene into an attempt to gain permissive intervention. Building on this premise, she argues that we lack jurisdiction to review interlocutory orders denying permissive intervention.

This argument is bootless. Even though the scope of our jurisdiction to hear interlocutory appeals from the denial of motions seeking permissive intervention is freighted with uncertainty, see generally 7C Charles A. Wright and Arthur R. Miller et al., Federal Practice and Procedure § 1923 (3d ed. 2013), that uncertainty is immaterial here because the premise on which Candelario's argument rests is faulty. Efron moved for intervention as of right; the district court considered his motion under Rule 24(a)(2); and — timeliness aside — Efron has a colorable claim to such intervention. The fact that Efron neglected to conform to some of the procedural requirements for as-of-right intervention is regrettable, as is his failure to develop his arguments about his interests in the case. But those failures do not by some mysterious alchemy transmogrify his motion into one for permissive intervention.

To sum up, Efron is appealing from the denial of a motion to intervene as of right. It follows that we have jurisdiction to hear and determine his interlocutory appeal.

## B. **The Merits**.

We turn next to Efron's challenge to the district court's denial of his motion. To succeed on a motion to intervene as of right, a putative intervenor must demonstrate:

> (i) the timeliness of [his] motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede [his] ability to protect that interest; and (iv) the lack of adequate representation of [his] position by any existing party.

R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009). The putative intervenor "must run the table and fulfill all four of these preconditions." Patch, 136 F.3d at 204.

The first of these elements — timeliness — is the sentinel that guards the gateway to intervention. The court below focused the lens of its inquiry on the question of timeliness. See Candelario III, 290 F.R.D. at 340-42. We emulate that sensible approach.

In this context, timeliness involves more than merely checking off the pages of a calendar. But even though multiple factors may influence the timeliness inquiry, see Banco Popular de P.R. v. Greenblatt, 964 F.2d 1227, 1231 (1st Cir. 1992); Culbreath v. Dukakis, 630 F.2d 15, 20-24 (1st Cir. 1980), the most important factor is the length of time that the putative intervenor knew or reasonably should have known that his interest was imperilled

before he deigned to seek intervention.  For this purpose, "[t]he passage of time is measured in relative, not absolute, terms."  R & G Mortg., 584 F.3d at 8.  "As a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies."  Id. at 7.  In the end, "[t]imeliness is to be gauged from all the circumstances, including the stage to which the proceedings have progressed before intervention is sought."  Chase Manhattan Bank v. Corporacion Hotelera de P.R., 516 F.2d 1047, 1049 (1st Cir. 1975) (per curiam).

We review the denial of a motion to intervene as of right for abuse of discretion.  See Negrón-Almeda v. Santiago, 528 F.3d 15, 21 (1st Cir. 2008); Int'l Paper Co. v. Inhabs. of Jay, Me., 887 F.2d 338, 344 (1st Cir. 1989).  Within this rubric, we evaluate the district court's legal rulings de novo and its factual findings for clear error.  See R & G Mortg., 584 F.3d at 7-8.  Withal, the district court's assessment of timeliness vel non "is case-specific and is entitled to substantial deference."  Cadle Co. v. Schlictmann, Conway, Crowley & Hugo, 338 F.3d 19, 21 (1st Cir. 2003); accord NAACP v. New York, 413 U.S. 345, 366 (1973).

In the case at hand, the district court "appl[ied] the general standard provided by . . . Rule 24(a)(2)."  Int'l Paper, 887 F.2d at 344.  The question for us, then, is whether the district court's decision "so fails to comport with that standard

as to indicate an abuse of discretion." Id. We answer that question in the negative.

Efron does not deny that he knew about Candelario's suit against UBS virtually from its inception. He likewise knew that the Candelario-UBS litigation had been pending for years and was well-developed by the time that he moved to intervene. And even before Candelario's suit began, Efron signed an account agreement that contained an indemnification clause.

Giving Efron the benefit of the doubt, the district court found that the very latest that he should have known that his rights were in jeopardy was July 28, 2011, when UBS filed a bankruptcy proof of claim for indemnification with respect to, inter alia, any settlement that it might make with Candelario. See Candelario III, 290 F.R.D. at 341. This was more than nineteen months before Efron sought to intervene.

Efron labors to discredit this finding. He tells us that he thought that Candelario's suit was worthless and would surely fail at trial. He suggests that, due to this mindset, he did not realize that his rights were in jeopardy until March 4, 2013 (when UBS notified him that it might settle).

This suggestion is disingenuous. A party cannot wilfully blind himself to facts that are perfectly apparent and then claim that he lacked knowledge of what those facts plainly portended.

We have seen this movie before: the district court's unwillingness to accept Efron's excuse for not asserting his rights at a much earlier date is entirely consistent with our decision in Narragansett Indian Tribe v. Ribo, Inc., 868 F.2d 5 (1st Cir. 1989). There, the putative intervenors insisted that they had waited more than thirteen months after they became aware of a lawsuit "because they believed that the lawsuit was frivolous; in their estimation, it would never go to trial, but would be dismissed." Id. at 7. We concluded that such a flimsy "excuse simply will not wash." Id. That reasoning is equally applicable here.

We have said before, and today reaffirm, that "[p]arties having knowledge of the pendency of litigation which may affect their interests sit idle at their peril." Id. Settlements are commonplace in civil cases; and Efron, an experienced litigator, knew (or, at least, should have known) from the time that he learned of Candelario's suit that settlement was a possibility.[2] He also knew (or, at least, should have known) that in the event it made any payment to Candelario, UBS would look to him for indemnification. Nevertheless, he chose to sit on his hands for many months without seeking to join the fray. When he finally

---

[2] Indeed, in our earlier opinion, we specifically admonished "that this [was] a case best resolved by settlement." Candelario II, 699 F.3d at 107 (internal quotation mark omitted). That opinion was published more than four months before Efron moved to intervene.

decided to act, the time for action had passed.  The district court found this lengthy delay inexcusable, and so do we.

Of course, the district court also weighed other factors that might potentially bear on the timeliness inquiry.  For example, the court considered the harm that might result to Efron from a denial of his motion to intervene.  It concluded that Efron would suffer no significant prejudice from the denial of intervention because any settlement or judgment in the Candelario-UBS litigation would not preclude him either from challenging Candelario's claims to the marital estate or from raising defenses against UBS's claims of indemnification.  See Candelario III, 290 F.R.D. at 342.

Although the court was correct when it said that a denial of intervention would not be a bar to Efron's subsequent raising of defenses, we are skeptical about its conclusion.  Efron obviously would be better off if he could defend directly against Candelario's claims in the pending litigation.  But any such harm is largely attributable to Efron's lollygagging and, thus, Efron is in a peculiarly poor position to grouse about it.  See R & G Mortg., 584 F.3d at 9 ("For obvious reasons, a preventable hardship weighs less heavily in the balance of harms.").  In all events, we agree with the district court that any prejudice to Efron from the denial of intervention is outweighed by the prejudice that would

-12-

inure to Candelario if intervention were granted at this late date. See Candelario III, 290 F.R.D. at 342.

In performing its analysis, the district court also found that there were no special circumstances that militated in favor of allowing intervention. See id. Efron makes a feeble attempt to impugn this finding, arguing that UBS's March 4 letter "is a special circumstance of actual notice which operates to excuse any dilatory conduct." Appellant's Br. at 12. But this riposte amounts to nothing more than smoke and mirrors; it conveniently overlooks the district court's supportable determination that Efron was on notice at least nineteen months prior to his receipt of the March 4 letter that UBS might settle with Candelario. Thus, the letter cannot plausibly be said to constitute a special circumstance supporting intervention.

To say more on this issue would be pointless. Efron knew (or, at least, should have known) that Candelario's suit against UBS threatened his financial interests. That knowledge called for vigilance on his part, but instead of exercising vigilance, Efron chose to sleep upon his rights. Under these circumstances, the district court acted well within the ambit of its discretion both in deeming Efron's motion to intervene untimely and in refusing to grant it. Cf. United States v. Metro. Dist. Comm'n, 865 F.2d 2, 5 (1st Cir. 1989) (explaining that "[t]he district court is in the best position to judge the impact of intervention at this time in

this complex ongoing litigation that has already consumed years of [its] attention").

## C.  Sanctions.

After Efron appealed, Candelario moved for sanctions on the ground that the appeal was frivolous.  A duty panel of this court referred the motion to this merits panel for disposition.  We now address that motion.

Candelario's motion for sanctions invokes Federal Rule of Appellate Procedure 38 and its counterpart, 1st Cir. R. 38.0.  Rule 38 affords the court of appeals discretion to "award just damages and single or double costs to the appellee" if the court "determines that an appeal is frivolous."  Fed. R. App. P. 38.  An appeal is frivolous if the arguments in support of it are wholly insubstantial and the outcome is obvious from the start.  See Cronin v. Town of Amesbury, 81 F.3d 257, 261 (1st Cir. 1996) (per curiam).  Put another way, an appeal is frivolous "when the appellant's legal position is doomed to failure — and an objectively reasonable litigant should have realized as much from the outset."  Toscano v. Chandris, S.A., 934 F.2d 383, 387 (1st Cir. 1991).

By dint of judicial interpretation, the scope of Rule 38 has been enlarged to reach beyond frivolousness simpliciter.  See, e.g., In re Simply Media, Inc., 583 F.3d 55, 56-57 (1st Cir. 2009) (per curiam).  Thus, we have sanctioned various shortcomings above

-14-

and beyond frivolousness under the aegis of Rule 38.  See, e.g., Thomas v. Digital Equip. Corp., 880 F.2d 1486, 1491 (1st Cir. 1989) (imposing Rule 38 sanctions for "blatant misrepresentations in [an] appellant's brief" (internal quotation mark omitted)).  So, too, Local Rule 38.0 authorizes sanctions not only for frivolous appeals but also for vexatious litigation conduct.  See Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 34 (1st Cir. 2008).

Candelario serves up a menu of grievances.  To whet our appetite, she lambastes Efron's noncompliance with the briefing schedule.  As a side dish, she calumnizes a number of statements contained in Efron's appellate filings as false and misleading.  The main course is her insistence that the appeal itself has been frivolous from the start.

We can quickly dispose of her first argument.  At the time that Candelario moved for sanctions, Efron's brief was one week overdue.  While an appellant who files his briefs out of time risks dismissal of his appeal, see 1st Cir. R. 45.0, the untimely filing in this case occasioned only a brief delay.  To impose sanctions would be tantamount to using an elephant gun to kill a fly.

The claimed misrepresentations present a different type of problem.  An appellate court lacks the factfinding capability of a trial court; and we are not prepared to choose, on this algid

-15-

record, between the parties' wildly conflicting versions of the truth.

This brings us to the principal thrust of Candelario's argument: her assertion that the appeal lacked any vestige of merit and should not have been taken at all. This argument presents a closer question.

Given his protracted delay, Efron's case for intervention was manifestly weak. But "weak" is not synonymous with "frivolous." "[A]n appeal can be weak, indeed almost hopeless, without being frivolous . . . ." Lallemand v. Univ. of R.I., 9 F.3d 214, 217-18 (1st Cir. 1993). In the last analysis, we think that the case-specific nature of timeliness determinations counsels against saying that Efron "had no legitimate ground for pursuing this appeal." E.H. Ashley & Co. v. Wells Fargo Alarm Servs., 907 F.2d 1274, 1280 (1st Cir. 1990). We therefore decline Candelario's invitation to sanction Efron simply for prosecuting the appeal.[3]

Let us be perfectly clear. Our denial of sanctions should not be taken as an endorsement of Efron's decision to

_____

[3] In her brief on appeal, Candelario endeavors to expand the dimensions of her motion to include, as additional grounds for sanctions, 28 U.S.C. § 1927 and this court's inherent power. While we may have discretion to allow such an expansion, it would be pointless to do so here. The same reasons that lead us to deny sanctions under Rule 38 are sufficient to ground a denial of sanctions under section 1927 and this court's inherent power.

-16-

appeal.  Although we have determined that Efron did not cross the line by appealing, he came perilously close to doing so.[4]

**III.  CONCLUSION**

We need go no further.  For the reasons elucidated above, the judgment of the district court is **<u>affirmed</u>** and Candelario's motion for appellate sanctions is **<u>denied</u>**.


**<u>So Ordered.  Costs shall be taxed against the appellant</u>**.

---

[4] We add, moreover, that neither Efron nor Candelario gains any advantage from the incessant hurling of epithets.  Rancor and petulance are not attractive qualities, and giving vent to them rarely if ever advances a litigant's cause.